IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KIRK WILLIAM OWEN,

                Plaintiff,

      vs.                               Case No. 6:22-cv-01201-JAR-KGG

DANNY SMITH and LISA LUSKER,

                Defendants.

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DANNY SMITH AND LISA LUSKER</u>

Defendants Danny Smith and Lisa Lusker submit the following memorandum in support of their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

### NATURE OF THE ACTION

Sheriff Smith posted a "be on the lookout" on the Sheriff's Office's Facebook page. The post explained the office had received a report of an older white male wearing nothing but underwear and a shirt driving a white Corvette speaking to several boys in a park. The man gave the boys large bags of candy, asked for their address, and told them he would come by later and to come out when he revved his engine. The post stated the man was identified as Kirk William Owen.

The post continued that several days later Owen drove by the boys' residence in the same Corvette but fled when confronted by a neighbor. The post concluded, "If anyone has information or knows the whereabouts of OWEN please call the Crawford County Sheriff's Office." *See* Ex. 1. The post included a photo of the Corvette captured from surveillance video and a photo of

Plaintiff. Crawford County deputies also visited Plaintiff's Grove, Oklahoma residence as part of their investigation.

Defendants now move for dismissal of Plaintiff's complaint based on the Facebook post and deputy visit. Plaintiff's failure to comply with Kansas's procedural prerequisite to filing suit deprives the Court of subject matter jurisdiction. And Plaintiff fails to state a claim on the merits.

## STATEMENT OF FACTS

### I.    Facts from the Complaint and Incorporated Facebook Post

Though Defendants dispute many of the allegations of Plaintiff's petition, for purposes of this Motion to Dismiss pursuant to Rule 12(b)(6), this motion must be decided based upon the *facts* pled in Plaintiff's complaint and incorporated documents, as opposed to conclusory allegations on the legal effects of events set forth in the complaint. *See* Sec. I.B, *infra*. The facts alleged in the complaint pertinent to the issues herein are set forth below. Defendants add facts of which this Court can take judicial notice. *See* Sec. I.A-B, *infra*.

1.    On August 4, 2022, Sheriff Smith posted on the Crawford County Sheriff's Facebook page, Plaintiff's name, pictures of Plaintiff and his car, and stated, "If anyone has information or knows the whereabouts of OWEN please call the Crawford County Sheriff's Office." *See* ECF 1 at 3; Ex. 1.

2.    The post explained the office had received a report of an older white male, wearing nothing but underwear and a shirt and driving a white Corvette, speaking to several boys in a park. The man gave the boys large bags of candy, asked for their address, and told them he would come by later and to come out when he revved his engine. The post stated the man was identified as Kirk William Owen. Ex. 1 (Facebook Post).

3.    The post continued that several days later Owen drove by the boys' residence in the same Corvette but fled when confronted by a neighbor. Ex. 1.

4.      On August 5, 2022, Crawford County deputies "came to [Plaintiff's] door." ECF 1 at 3.

5.      Plaintiff has received at least 20 death threats on Facebook. *Id.*

6.      He is in fear of the threats from Facebook. *Id.* at 4.

7.      Plaintiff's claims have not been presented through any type of administrative procedure within any government agency. *Id.* at 5.

## II.     Additional Facts

8.      On August 3, 2022, a Crawford County father filed for a temporary protective order from stalking, sexual assault, and human trafficking on behalf of his several children against Kirk Owen of Grove, Oklahoma. Ex. 3 at 1, 4 (Petition for Protective Order).[1]

9.      The petition contains all the allegations from Sheriff Smith's post with additional details and commentary. Ex. 3 at 2-3, 5-6.

10.     Plaintiff contested the order. Ex. 4 (Transcript of the hearing).

11.     At the hearing, Plaintiff testified he was driving by the park, when one of the boys commented "nice car." Tr. at 22-23.

12.     He had the idea to give them his candy rather than dispose of it because he had a binge eating disorder. *Id.* at 24-25.

13.     He asked one of the boys if he lived in town, and the boy volunteered his address. *Id.* at 27.

14.     Plaintiff was surprised the boy volunteered his address and explained:

but I got the strong feeling that they really -- there is kind of something about them, because they were within two feet of me, Your Honor, and they could -- they were looking straight in my eyes kind of like in my soul and they could tell that I was, you know, a real kind, generous, caring person. And they kind of were able to have the power somehow to see my soul and they -- I could tell they kind of wanted me

---

[1] The protective order documents are redacted pursuant to Fed. R. Civ. P. 5.2(a) and K.S.A. 60-31a04(f).

to come back by. . . . And I wanted to go by their house. I told them I would come
by about every week, go through that area . . . .

*Id.* at 27.

15.     The court read from Plaintiff's motion to dismiss, which stated, "I never drove the

Corvette past their home. The neighbor waived me down before I got in front of their property."

*Id.* at 4.

16.     Plaintiff admitted the neighbor accurately testified that Plaintiff—after speaking to

the neighbor near the boys' house—drove in reverse to the nearest intersection and drove away.

*Id.* at 14-17.

17.     Plaintiff added that he is a registered sex offender and explained the circumstances

of several sex crime convictions. *Id.* at 29-32.

18.     After the hearing, the court entered a final protective order finding the allegations

of stalking, sexual assault, or human trafficking were proven by a preponderance of the evidence.

Ex. 5 at 2 (Protective Order).

19.     Crawford County Counselor Jim Emerson attests that he receives, reviews, and

responds to K.S.A. 12-105b(d) notices of claims. Ex. 2 (Emerson Affidavit).

20.     To Mr. Emerson's knowledge, the County has neither received nor denied a notice

of claim from Plaintiff. Ex. 2.

21.     Plaintiff filed his complaint on September 2, 2022. ECF 1.[2]

## ISSUES PRESENTED

1.     The Court lacks subject matter jurisdiction because Plaintiff failed to comply with K.S.A.
       12-105b's notice requirement.

2.     Plaintiff fails to state a claim based on the Facebook post.

---

[2] Since filing his complaint, Plaintiff was arrested and is incarcerated in Beaver, Oklahoma. Counsel has
included both Plaintiff's home address and his jail address in the notice of service.

3.    Plaintiff fails to state a claim based on Crawford County deputies' visit to his residence in Oklahoma.

4.    Plaintiff fails to state a claim against County Clerk Lusker.

## ARGUMENT AND AUTHORITIES

### I.    Standards of Review

#### A.    Standard and Evidence Considered for Dismissal for Lack of Subject Matter Jurisdiction

Generally, a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) takes one of two forms: a facial attack or a factual attack. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). First, a "facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Id.* (citations omitted). Second, a "factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction. *Id.* (citations omitted). When considering a factual attack on subject matter jurisdiction "a district court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Id.* (quoting *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001)). And, the "court's exercise of such discretion does not convert a Rule 12(b)(1) motion into a summary judgment motion unless 'resolution of the jurisdictional question is intertwined with the merits.'" *Id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).

#### B.    Standard and Evidence Considered for Motions to Dismiss for Failure to State a Claim

Rule 12(b)(6) allows a party to move the court to dismiss an action for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true but it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). And, although this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008) (finding that district court "was correct in considering" state court documents of which it took judicial notice on a Rule 12(b)(6) motion to dismiss; *Dean Witter Reynolds, Inc. v. Howsam,* 261 F.3d 956, 961 (10th Cir. 2001) ("It is accepted practice that, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." (internal quotation omitted)).

In *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, it was held that a district court may consider authentic documents attached to or referenced in the complaint that are central to the

plaintiff's claim in a motion to dismiss without converting the motion to one for summary judgment. 861 F.3d 1081, 1103 (10th Cir. 2017). When a complaint "refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates." *Id*. (citation and quotation omitted).

### C.    Standard for Summary Judgment

Should the Court consider materials it finds transforms this motion into one for summary judgment, *see* Fed. R. Civ. P 12(d), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3]

## II.    Applicable Law

Plaintiff bases jurisdiction on diversity given his residence in Oklahoma. ECF 1 at 2. "In actions where jurisdiction is based on diversity of citizenship, the substantive law, including the choice of law rules, of the forum state is applied." *Moore v. Subaru of Am.*, 891 F.2d 1445, 1448 (10th Cir. 1989). Accordingly, the Court applies Kansas's choice of law rules.

Plaintiff's claims sound in tort. And, for tort claims, Kansas applies "the doctrine of *lex loci delicti*, meaning 'the law of the place where the tort was committed' or where the wrong occurred." *Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1031 (D. Kan. 2018) (quoting *Ritchie Enters. v. Honeywell Bull, Inc.*, 730 F. Supp. 1041, 1046 (D. Kan. 1990)). "Where the wrong occurred is generally considered to be the place where the injury was suffered." *Id.*

---

[3] Defendants have filed the requisite "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment," to apprise Plaintiff of his responsibilities to controvert Defendants' evidence should the Court convert this motion into one for summary judgment.

"Generally, Kansas courts have determined that where the wrong was felt is the location of the plaintiff's residency." *Hudson Assocs. Consulting, Inc. v. Weidner*, No. 06-2461-EFM, 2010 WL 1980291, at *5–6 (D. Kan. May 18, 2010); *see also Delcavo v. Tour Res. Consultants, LLC*, No. 21-2137-JWL, 2021 WL 5867215, at *1 (D. Kan. Dec. 10, 2021) ("The Court has previously concluded that the law of the state of the plaintiff's residence, where the plaintiff suffered any harm, governs a defamation claim."). Therefore—unless Plaintiff is particularly concerned with his reputation in Kansas—Oklahoma's laws, as his state of residence, should govern. *Compare Orchestrate HR, Inc. v. Blue Cross Blue Shield Kansas*, No. 519CV04007HLTTJJ, 2019 WL 6330477, at *5 (D. Kan. Nov. 26, 2019) ("Where the tortious action occurs in one state, but the injury occurs in another, the state where the injury occurred is the law that governs."); *Smith v. Williams*, No. 20-CV-2224-EFM-GEB, 2021 WL 4745713, at *7 (D. Kan. Oct. 12, 2021) (finding plaintiff was a Kansas resident but applying Missouri law because plaintiff's claimed injuries were in Missouri), *on reconsideration,* No. 20-CV-2224-EFM-GEB, 2022 WL 370258 (D. Kan. Feb. 8, 2022).

## III.   The Court Should Dismiss for Lack of Subject Matter Jurisdiction.

Regardless of which state's substantive law is applied, Plaintiff's failure to comply with the Kansas Tort Claims Act's (KTCA) notice requirement deprives the Court of subject matter jurisdiction.

Kansas requires "[a]ny person having a claim against a municipality or against an employee of a municipality which could give rise to an action brought under the Kansas tort claims act" to file a written notice of claim "with the clerk or governing body of the municipality." K.S.A. 12-105b(d). The notice shall consist of several elements similar to a complaint allowing the municipality to make an educated determination on whether to settle. *See id.* "No person may

initiate an action against a municipality or against an employee of a municipality unless the claim has been denied in whole or part." *Id.*

"Compliance with this provision is jurisdictional in nature under Kansas law, such that 'if the statutory requirements are not met, the court cannot acquire jurisdiction' over the municipality or the employee on the claim." *Smith*, 2022 WL 370258, at *2 (citing *Farmers Bank & Tr. v. Homestead Cmty. Dev.*, 58 Kan. App. 2d 877, 476 P.3d 1, 14 (2020) ("Failure to file the notice deprives the district court of subject matter jurisdiction over the claim.")); *Lara v. Unif. Sch. Dist. No. 501*, 350 F. App'x 280, 284-85 (10th Cir. 2009) (holding compliance with K.S.A. 12-105b is mandatory and affirming dismissal of complaint for failure to satisfy that provision).

As a facial challenge, Plaintiff's complaint fails to establish compliance with the KTCA's notice requirement. Plaintiff checked "No" for the question of whether the civil action had been represented through any type of administrative procedure within a government agency. ECF 1 at 5.

As a factual challenge, Crawford County Counselor Jim Emerson attests that he receives, reviews, and responds to K.S.A. 12-105b(d) notices of claims. SOF ¶ 19. To his knowledge, the County has neither received nor denied a notice of claim from Plaintiff. SOF ¶ 20. And Plaintiff filed suit on September 2, 2022, less than 30 days after the August 4 Facebook post—far less than the requisite 120 days for constructive denial. SOF ¶¶ 1, 21; K.S.A. 12-105b(d).

Plaintiff asserts two erroneous reasons for failing to pursue administrative remedies: (1) "multijurisdictional"; and (2) "since Smith is employed by Crawford County possible Bias." ECF 1 at 4.

First, Oklahoma would apply the KTCA's notice requirement as a matter of comity for claims against Kansas municipalities for torts occurring in Oklahoma. *Kansas Mun. Gas Agency*

*v. Vesta Energy Co.*, 840 F. Supp. 814, 824 (D. Kan. 1993). In coming to this conclusion, *Kansas Municipal Gas Agency* analogized to *Beard v. Viene*, 826 P.2d 990 (Okla. 1992), when the Oklahoma Supreme Court applied Missouri's recovery limit on municipal tort liability as a matter of comity given Oklahoma had a similar recovery limit. *Kansas Mun. Gas Agency*, 840 F. Supp. at 823. *Kansas Municipal Gas Agency* applied the same logic to the KTCA's notice requirement because Oklahoma's Governmental Tort Claims Act contained (and still contains) a notice provision nearly identical to that of Kansas. *Id.* (citing 51 O.S.A. 156). *Compare Smith*, 2022 WL 370258, at *3-4 (holding Missouri would recognize the KTCA's notice requirement). Accordingly, the multijurisdictional nature of Plaintiff's case did not eliminate the need for him to comply with K.S.A. 12-105b(d).

Second, any bias Sheriff Smith may have is not grounds to bypass the notice requirement. The notice requirement simply offers municipal governing bodies an opportunity to investigate, deliberate, and possibly negotiate a settlement with a claimant. A municipality's bias as the prospective defendant is assumed. *See* K.S.A. 12-105b(d).

The KTCA applies, and Plaintiff failed to comply with its notice requirement depriving the Court of subject matter jurisdiction.

## IV.   The Court Should Dismiss for Failure to State a Claim

### A.   Plaintiff Fails to State a Claim Under Oklahoma Law Based on Sheriff Smith's Facebook Post

Plaintiff's allegations regarding Sheriff Smith's Facebook post sound in libel, false light, and intentional infliction of emotional distress (IIED). Plaintiff fails to state a claim as to each.

#### 1.   Plaintiff fails to state a claim for libel or false light.

Oklahoma states the torts of libel and false light as follows, with the elements on which this motion is based italicized:

> *Libel is a false or malicious[4] unprivileged* publication by writing, printing, picture, or effigy or other fixed representation to the eye, which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation . . . .

12 O.S.A. 1441. Oklahoma requires "fault amounting at least to negligence on the part of the publisher." *Thacker v. Walton*, 2021 OK CIV APP 5, ¶ 17, 499 P.3d 1255, 1262.

> In order to recover for false light invasion of privacy, the plaintiff must show (1) *the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light*, (2) the false light in which the Plaintiff was placed would be highly offensive to a reasonable person, and (3) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Bates v. Cast*, 2014 OK CIV APP 8, ¶ 18, 316 P.3d 246, 252. Plaintiff fails to state a claim for either libel or false light because (1) Sheriff Smith is immune; (2) the post is substantially true; and (3) Plaintiff's claims are barred by collateral estoppel.

First, Sheriff Smith receives discretionary immunity under the KTCA for mere negligence. *Schreiner v. Hodge*, 315 Kan. 25, 42, 504 P.3d 410, 425 (2022) ("[A]n officer's decision whether and *how* to investigate a crime, along with their reasonable suspicion determination, require the type of policy-based judgments the Legislature intended to insulate from tort liability under the discretionary function exception in K.S.A. 75-6104(e)." (emphasis added)); *id.* at 428-29 (finding malicious conduct excepted from immunity). And, "[u]nder the principle of comity, Oklahoma will recognize [this] limitation on the municipal tort liability of a sister state," as it has a nearly identical privilege. *Beard*, 826 P.2d at 991 (applying Missouri's recovery limit on its municipalities' tort liability against an Oklahoma plaintiff); 51 O.S.A. 155(5) ("[A] political

---

[4] A "malicious" communication is still false. *See Krimbill v. Talarico*, 2018 OK CIV APP 37, 417 P.3d 1240, 1252 n.14 ("The general rule is that the 'truth of the communication is a complete defense to a civil action for libel.'" (quoting *Grogan v. KOKH, LLC*, 2011 OK CIV APP 34, ¶ 11, 256 P.3d 1021 and citing 12 O.S.A. 1444.1 (identifying truth as an affirmative defense)).

subdivision shall not be liable if a loss or claim results from: . . . Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees."); *see also* 51 O.S.A. 155(17) (immunizing "[m]isrepresentation, if unintentional."). The immunity appears to enact the doctrine of conditional privilege, which also shields officials from mere negligence. Rest. 2d of Torts § 598A (1977) ("An occasion makes a publication conditionally privileged if an inferior administrative officer of a state or any of its subdivisions who is not entitled to an absolute privilege makes a defamatory communication required or permitted in the performance of his official duties."). Sheriff Smith's post was an exercise in discretion in protecting the public and enlisting the public's aid in detaining Plaintiff. Therefore, he is immune from liability for mere negligence in verifying the truth of the post's content.

Second, the post was "substantially true." *Krimbill*, 417 P.3d at 1252 n.14 ("An affirmative defense is established when the publication is substantially true." (quoting *Akins v. Altus Newspapers, Inc.*, 1977 OK 179, 609 P.2d 1263)). The post couched the content as reports and an identification. SOF ¶¶ 2-3. Court records indeed reflect a report and identification. On August 3, 2022, a Crawford County father filed for a temporary protective order from stalking, sexual assault, and human trafficking on behalf of his several children against Kirk Owen of Grove, Oklahoma. SOF ¶ 8. The petition contains all the allegations from Sheriff Smith's post with additional details and commentary. SOF ¶ 9. Therefore, the post truthfully reported third parties' allegations. *See Grogan*, 256 P.3d 1021, 1027 (holding whether plaintiff threatened to shoot students was immaterial when media truthfully reported that parents had accused plaintiff of threatening to shoot students).

Alternatively, the underlying conduct alleged in the Facebook post is also substantially true by Plaintiff's own admission. Plaintiff contested the protective order. At the hearing, he testified he was driving by the park, when one of the boys commented "nice car." SOF ¶ 11. He had the idea to give them his candy rather than dispose of it because he had a binge eating disorder. SOF ¶ 12. He asked one of the boys if he lived in town, and the boy volunteered his address. SOF ¶ 13. Plaintiff was surprised the boy volunteered his address and explained

> but I got the strong feeling that they really -- there is kind of something about them, because they were within two feet of me, Your Honor, and they could -- they were looking straight in my eyes kind of like in my soul and they could tell that I was, you know, a real kind, generous, caring person. And they kind of were able to have the power somehow to see my soul and they -- I could tell they kind of wanted me to come back by. . . . And I wanted to go by their house. I told them I would come by about every week, go through that area . . . .

SOF ¶ 14.

The court read from Plaintiff's motion to dismiss, which stated, "I never drove the Corvette past their home. The neighbor waived me down before I got in front of their property." SOF ¶ 15. Plaintiff admitted the neighbor accurately testified that Plaintiff—after speaking to the neighbor near the boys' house—drove in reverse to the nearest intersection and drove away. SOF ¶ 16. Plaintiff added that he is a registered sex offender and explained the circumstances of several sex crime convictions. SOF ¶ 17. Therefore, the Facebook post's alleged conduct was substantially true. *See Thacker*, 499 P.3d at 1262 (dismissing false light and defamation claims based on sheriff's comments on plaintiff's guilt after the plaintiff pled guilty).

Third, after the hearing, the court entered a final protective order finding the allegations of stalking, sexual assault, or human trafficking were proven by a preponderance of the evidence. SOF ¶ 18. Accordingly, Plaintiff is barred by collateral estoppel from relitigating the truth of whether he was stalking the boys. *Lee v. Knight*, 1989 OK 50, 771 P.2d 1003, 1005 (adopting

Restatement of Judgments 2d (1982) § 85: "A judgment in favor of the prosecuting authority is preclusive in favor of a third person in a civil action: (a) Against the defendant in the criminal prosecution").

### 2. Plaintiff fails to state a claim for IIED.

Oklahoma states the tort of IIED as follows, with the element on which this motion is based italicized:

> To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) *the defendant's conduct was extreme and outrageous*; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.

*Computer Publications, Inc. v. Welton*, 2002 OK 50, ¶ 7, 49 P.3d 732, 735. Plaintiff fails to state a claim because Sheriff Smith's post was not extreme or outrageous.

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to the average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Gaylord Ent. Co. v. Thompson*, 1998 OK 30, ¶ 45 n.92, 958 P.2d 128, 149 (quoting Rest. 2d of Torts § 46 (1965). "It is the trial court's responsibility initially to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the § 46 standards." *Id.* at 1998 OK 30, ¶ 45.

An average member of the community would not be outraged by Sheriff Smith's conduct. Public safety justified exposure of Plaintiff's suspicious activities in the community to put parents on guard and facilitate investigation. Sheriff Smith merely identified a suspicious individual and asked witnesses to call his office. Sheriff Smith did not provide Plaintiff's contact information or encourage harassment, much less death threats. *Compare* Rest. 2d of Torts § 46 ("The actor is never liable, for [intentional infliction of emotional distress], where he has done no more than to

insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress.").

The privileged and nondefamatory nature of the post renders it nonactionable as IIED. *See Gaylord Ent. Co.*, 958 P.2d at 149 ("The offensive publications in this case scenario are both [constitutionally] *protected* and *nondefamatory.* These two characteristics, when combined, take the tendered petitioners' conduct out of that category which makes it actionable under the tort-of-outrage rubric.").

In sum, Plaintiff fails to state a claim based on the Facebook post.

## B.    *Arguendo*, Plaintiff Fails to State a Claim Under Kansas Law Based on Sheriff Smith's Facebook Post

If the Court determines that Kansas law should apply to Plaintiff's prospective tort claims based on the Facebook post, he fails to state a claim for substantially the same reasons. Kansas states the torts of libel and false light as follows with the elements on which this motion is based in italics:

Defamation (including libel and slander) requires

(1) *false and defamatory words* (2) communicated to a third person (3) which result in harm to the reputation of the person defamed.

*Dominguez v. Davidson*, 266 Kan. 926, 930, 974 P.2d 112, 117 (1999) (cleaned up and numbers added).

False light invasion of privacy requires:

(1) publication of some kind must be made to a third party; (2) *the publication must falsely represent the person*; and (3) that representation must be highly offensive to a reasonable person.

*Id.* at 121 (citation omitted). Again, Plaintiff fails to state a claim for either libel or false light because (1) Sheriff Smith is immune (see above); and (2) the post is substantially true.

As in Oklahoma, "[t]ruth and privilege are defenses available in both causes of action." *Id*. Kansas also applies the substantial truth doctrine. *Redmond v. Sun Pub. Co*., 239 Kan. 30, 37, 716 P.2d 168, 173 (1986) ("Where the published statements are substantially true, there is no liability."). Sheriff Smith truthfully conveyed a third party's identification and report of Plaintiff's activities. *Compare Valadez v. Emmis Commc'ns*, 290 Kan. 472, 478, 229 P.3d 389, 394 (2010) (noting news station truthfully reported that an anonymous tip connected the plaintiff to a notorious criminal). Plaintiff also admitted the post's truthfulness. *See* above.

Kansas states the tort of IIED as follows with the element on which this motion is based in italics:

> (1) The conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) *the conduct was extreme and outrageous*; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe.

*Valadez*, 229 P.3d at 394. As in Oklahoma, the court determines in the first instance: "(1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it." *Id.* at 477. The "conduct must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society." *Id.* The conduct is privileged when the actor "has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." *Id.* (quoting Restatement (Second) of Torts § 46, comment g (1976)). Therefore, for the same reasons as above, Plaintiff fails to state a claim based on the Facebook post.

**C.     Plaintiff Fails to State a Claim Based on Deputies' Visit to His Residence.**

Owen also claims Crawford County detectives violated K.S.A. 19-828, which permits Kansas counties bordering other states to form joint task forces for enforcement of drug laws and prevention of terrorism. Agreements to joint task forces give out-of-jurisdiction officers full powers and immunities in neighboring jurisdictions. *See id.* Owen takes this statute to mean the Crawford County detectives couldn't leave Kansas to visit his residence. The statute is a shield for officers, not a cause of action.

The deputies had the same right as any private citizen to "c[o]me to [Plaintiff's] door." SOF ¶ 4. As stated in the criminal suppression context,

> [W]e do not believe [the Statewide Municipal Police Jurisdiction Act] prohibits police officers from leaving their primary jurisdiction to go into other jurisdictions to ask questions therein, or to enter a residence therein upon the consent of its owners (and full disclosure of the officers' purpose) and observe what they observe therein. Such unobtrusive police conduct is outside the scope of [the Act], and is not illegal. Any citizen of the Commonwealth could do what Detectives Freeman and Hediger did herein, namely drive to the O'Shea residence, ask them questions, enter their home with their consent and look around. In the absence of explicit legislative directives to the contrary, we will not prohibit police officers from doing that which a private citizen could do.

*Com. v. O'Shea*, 523 Pa. 384, 398, 567 A.2d 1023, 1029 (1989). Owen doesn't identify any injury from the visit nor even name the deputies as defendants. Any claim arising from the visit should be dismissed because Plaintiff does not state sufficient factual matter for the Court to infer liability. *See Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 8(a) (requiring complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief.").

**D.     Defendant Fails to State a Claim Against County Clerk Lusker.**

At the very least, County Clerk Lusker should be dismissed from the action because Plaintiff fails to make a single allegation concerning her, let alone sufficient factual matter for the

Court to infer liability. *See Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 8(a) (requiring complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief.").

## CONCLUSION

Because Plaintiff failed both to comply with K.S.A. 105b(d) and to state a claim, Defendants ask the Court to dismiss his complaint. Because Plaintiff is very unlikely to ever be able to state a claim, the dismissal should be with prejudice.

Respectfully submitted,

/s/ Brian C. Mauldin

| | |
|---|---|
| Terelle A. Mock | #21465 |
| Brian C. Mauldin | #28636 |

FISHER, PATTERSON, SAYLER & SMITH, L.L.P.
3550 S.W. 5th Street
Topeka, KS  66606
(785) 232-7761 | (785) 232-6604 – fax
E-mail: tmock@fpsslaw.com | bmauldin@fpsslaw.com
**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following: No one.

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Kirk William Owen
241 Anchor Road
Grove, OK 74344

and

Kirk William Owen
c/o Beaver County Jail
P.O. Box 687
Beaver, OK 73592
***Pro se* Plaintiff**

/s/ Brian C. Mauldin
Brian C. Mauldin